UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-cr-20763-LENARD

UNITED STATES OF AMERICA,  )
       *Plaintiff*,  )
                               )
vs.  )
                               )
EDISON GOMEZ-MOLINA,  )
       *Defendant*.  )
_____  )

## SENTENCING MEMORANDUM

The Defendant, EDISON GOMEZ-MOLINA, by and through undersigned counsel, respectfully files this Sentencing Memorandum to assist the Court is arriving at a just and appropriate sentence. Beyond its contents, the Defendant looks forward to the opportunity to set forth additional information at sentencing.

## OVERVIEW

The federal judicial tradition is for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Pepper v. United States*, 131 S. Ct. 1229, 1239 (2011).

The Defendant reached a plea agreement with the government. He now seeks to address the statutory mandate under 18 U.S.C. § 3553(a)(2),

1

with a particular prayer that punishment imposed shall be, "sufficient, but not greater than necessary to comply with the [sentencing] purposes."

## ANALYSIS OF SECTION 3553(A) SENTENCING FACTORS

In addition to the sentencing guidelines range, this court should consider the factors outlined in 18 U.S.C. § 3553 (a), See *Gall v. U.S.*, 128 S.Ct. 586, at 602 (2007) and *Kimbough v. United States*, S.C. 558, at 564 (2007), and impose a sentence sufficient, but not greater than necessary to achieve the statutory purpose of punishment and deterrence.

Title 18, United States Code, Section 3553(a), which sets forth the factors this Court must take into account in determining defendant's sentence, states as follows:

(a) Factors to be considered in imposing a sentence.

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.
The court, in determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;

2

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

   (A). the applicable category of the offense committed by the applicable category of defendant as set forth in the guidelines- [the United States Sentencing Guidelines]

      \*  \*  \*

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

      \*  \*  \*

### (1) The Nature and Circumstances of the Offense

Here, Mr. Edison Gomez-Molina pled to Count I of the Indictment charging him with the shipment or attempted shipment of at least 150 kilograms of cocaine. He acknowledged his participation in the conspiracy and recognizes that by his actions he promoted the commission of a crime. Such conduct is harmful to society and deserves punishment; however, the punishment should be tempered by his underlying involvement in the offense.

As the PSI reflects, Edison's involvement in the conspiracy was limited in scope, having received a minor role assessment. PSI, ¶ 7. It was through a series of bad choices and associations that rendered him susceptible to becoming involved in an activity, which upon greater reflection under a different set of circumstances, he would have avoided.

**Defendant's Personal Characteristics and Personal History**

Edison was born on February 27, 1973, in Medellin, Colombia to the marital union of Mr. and Mrs. Gomez-Molina. Edison grew up in a close-knit middle-class family. His parents always strove to forge men out of Edison and his two older brothers. Edison's father, in particular, led an exemplary life of service to his country and to their community. His father was a retired officer in the Colombian Armed Forces. Never one to rest on his laurels, he came out of retirement to work as head of security for an American gas company with offices in Colombia. He met an untimely death, however, at the age of 61, after being shot by those he was investigating in connection with the theft of large amounts of gasoline from the company he was hired to protect. Edison's mother, age 61, continues to live Medellin.

As the PSI also bears out, Edison's parents encouraged and supported each of their three sons in their respective callings, with one studying law,

4

another business administration and, their youngest, Edison, accounting. Edison's older brother, age 47, resides in Colombia with his wife and family and works as a lawyer. Edison's other brother, age 45, also lives in Colombia and works as an administrator for a public transportation service company. The three brothers were always close, especially following the death of their father in 1997.

Edison married in 2003. He and his wife have two children, ages 6 and 3. His wife is an accountant with a large multi-national company with offices in Colombia. Following his marriage, Edison started a bookkeeping company in 2004, which he managed with the assistance of his two employees until 2012.

As the above narrative suggest, Edison's personal history was centered on family and work. What the above narrative merely alludes to is the type of person Edison is. Edison's wife, two personal friends of over 20 years, and a former client took it upon themselves to share their impressions of Edison Gomez-Molina, hoping to give some insight into the person before this Court imposes sentence. (See attached Exhibit A).

As mentioned by his personal friend of over 20 years, Mr. Otalvaro Ochoa, Edison has always been a virtuous man, a family man, a hard working man, and an honest man. Mr. Cano-Uribe, a personal friend of over

25 years, echoed these sentiments. A former client, also wanting to be heard, shares with us Edison's service to his profession. In his letter, Mr. Cano describes Edison as a competent bookkeeper who was very dedicated and proficient in rendering services.

At a personal level, Edison is described by his wife as being a devoted family man, husband, and a model father to his two children, and a good son and brother.

(2). <u>The Need for the Sentence Imposed</u>

A. <u>To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense</u>

In part, this sentencing criteria reviews (1) the Defendant's crime, (2) the forms and duration of punishment thus far, (3) the message sent through punishment, both individually and to others with an ultimate assessment, concerning (4) what additional jail penalty he should pay.

The offense is a serious one. Any person who transgresses society's law by engaging in illicit acts must face the consequences of his actions. A sentence disproportionate to the seriousness of the offense does not promote respect for the law. The prescribed guideline sentence for the offense (between 70 and 87 months) does not take into consideration factors previously argued, such as Defendant's age, his positive family and employment history.

6

To promote respect for the law and provide just punishment for the offense the sentence imposed should be less than the one prescribed by the sentencing guidelines. Edison was jailed in his home country for a period of twelve months. Family visitation was punitive. The United States employs a powerful tool in extradition. The defendant is jailed under difficult conditions in his home country, taken from his country, prosecuted here under an alien system of law. Much is written about the deterrence, both general and specific. The guideline ranges constitute more than sufficient punishment.

B. <u>To Afford Adequate Deterrence</u>

The purpose of general deterrence is to discourage similar wrongdoing by others through a reminder that the law's warnings are real, and that the grim consequences of imprisonment are likely to follow for crimes that impact the public.

General deterrence is served (beyond whether the sentence is a few years more harsh or more lenient) because it is known to others that this Defendant, and those similarly situated, will be held thousands of miles from home, family, and friends. This is an extraordinarily great penalty beyond what may be also measured in months and years. If someone can be deterred, this arrest, prosecution, process and sentence serves that purpose.

The following information and studies are probably repetitive to what this Court has heard before. This Court has probably already considered and appropriately weighed its perceived value. However, given the importance of the sentencing process, counsel would be remiss without addressing these facts. While some believe the higher the sentence the greater the effect in deterring others, empirical research shows no relationship between sentence length and deterrence. *Deterrence in Criminal Justice-Evaluating Certainty vs. Severity of Punishment*, November 2010, The Sentencing Project.[1]

> Existing evidence does not support any significant public safety benefit of the practice of increasing the severity of sentences by imposing a longer prison terms. In fact, research findings imply that increasingly lengthy prison terms are counterproductive. Overall, the evidence indicates that the deterrent effect of lengthy prison sentences would not be substantially diminished if punishments were reduced from their current levels.

The research finds that "deterrence works," only in the sense that there is less crime with a criminal justice system than without one. But the question for Your Honor, given statutory mandate for consideration, is also "marginal deterrence," i.e., whether any particular additional quantum of punishment in this case would result in increased deterrence and thus decreased crime.

---

[1] That 2010 paper relies upon an extraordinary number of studies of recidivism by, (1) the U.S. Department of Justice, (2) other well respected journals, (3) the Center for Economic and Policy Research, as well as, (4) conclusions reached by Steve Aos, Marna Miller, and Elizabeth Drake, "Evidence-Based Public Policy Options to Reduce Future Prison Construction, Criminal Justice Costs, and Crime Rates," Olympia: Washington State Institute for Public Policy, 2006.

The findings are uniformly negative: there is no evidence that increases in sentence length reduces crime through deterrence. Current empirical research on general deterrence shows that while certainty of punishment has a deterrent effect; increases in severity of punishments do not yield significant (if any) marginal deterrent effects. "Three National Academy of Science panels…reached that conclusion, as has every major survey of the evidence." See Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).

Moreover, the passage of time brings change in human behavior. The person who became involved in the offense over five (5) years ago is not the same person who is presently before the court.  Thus, deterrence is accomplished when the sentence imposed carries incarceration, but raises a ray of hope that the court will not limit itself to the need for deterrence when imposing sentence.

      C.     <u>Protect the Public from Future Crimes of the Defendant</u>

Specific deterrence is achieved through, (1) incapacitation, (2) prosecution, (3) cooperation the Defendant rendered against coconspirators, and (4) the social opprobrium associated with the charged criminal conduct.

The Defendant is a citizen of Colombia. He will be deported after his substantial jail term. The Defendant has a wonderful family. He has learned

9

the hardest of ways. Consequently, based on the foregoing, it is reasonable to assume society will be protected from further crimes committed by this Defendant.

Society will be protected for a lengthy period even assuming this Court provides a great degree of leniency. This Defendant knows, with drug charges, he faced the functional equivalent of life imprisonment. He knows this even though he never traveled to our shores. It is highly unlikely that Edison would engage in future criminal activity. All relevant factors point to a person capable of earning a livelihood through hard work. This Defendant, therefore, should not be confined to incapacitate him. He is not dangerous. It is most improbable that he will commit similar, or any offenses in the future. There is no need for specific deterrence.

The Defendant cooperated, and provided information against others not yet brought before the Bar of Justice. Beyond a lenient sentence, this mitigates against any need to further protect society from this Defendant.

Finally, statistical measures (beyond his personal and family history) suggest an extraordinarily low likelihood of recidivism given the Defendant's personal circumstances. See, *Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines*, A Component of the Fifteen Year Report on the U.S. Sentencing

Commission's Legislative Mandate (May 2004). Available at: http://www.ussc.gov/publicat/Recidivism_General.pdf. That study provides the following specific data:

> "Recidivism rates decline relatively consistently as age increases, from 35.5% under age 21 to 9.5% over age 50." Id. at 12.
> "Offenders sentenced under the fraud, larceny and drug guidelines are the least likely to recidivate, and drug offenders are the least of all except in CHCI." Id. at 13.
> "The Offense Level is not a predictor of recidivism." Id. at 13.

D. <u>To Provide Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Way</u>

A number of courts utilize the provisions of this section to focus on the "rehabilitative ideal" inherent in the punishment process. The Supreme Court in *Peppers* focuses on this criteria. This Defendant is remorseful for his misconduct. Everything the Defendant has done since his arrest speaks well of his rehabilitation potential. (Rehabilitation sometimes comes, in part, from the epiphany of acknowledging one's wrongs and suffering their consequences. Sometimes knowledge is not translated into understanding without suffering the punishment and pain from doing wrong and being caught.)

This Defendant, (1) has a genuine future awaiting him with good family and legitimate business, (2) acknowledges his guilt, and (3)

11

cooperated. While the Court has the duty to consider the need for "treatment," prison time is not necessary to promote rehabilitation. Rehabilitation has commenced.

(6). <u>The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct</u>

When determining whether a sentence creates an unwarranted disparity, the court should consider a Defendant's acceptance of responsibility, the nature and extent of Defendant's participation in the criminal activity and a Defendant's criminal history. Dealing with the last issue first, Edison has no prior criminal history. With regards to acceptance of responsibility, the government recognizes that in interviews with the government, Edison admitted his involvement in the conspiracy and did so immediately upon his arrival to the Federal Detention Center.

While none of Edison's co-defendants have been sentenced, the Court in *Gall* made clear that considering the disparity between similarly situated co-defendants is appropriate at sentencing. *Gall*, 128 S.Ct. at 600. In many respects, therefore, when his activities are compared to his co-defendants, and his minor role in those activities is assessed, a sentence of 50 months followed by 2 years of supervised release is sufficient, but not greater than

12

necessary to achieve the statutory purpose of punishment and deterrence, and to avoid unwarranted sentence disparities.

More compelling, however, are the sentences imposed by this Court on defendant's similarly situated.  In the case of *United States v. Juan Pablo Grimaldos Rojas*, Case No. 12-cr-20365-JAL, (S.D. Florida 2012), the defendant pled to count I of the Indictment charging him with conspiracy to import more than 150 kilograms of cocaine, in violation of 21 USC §963. *Id*., D.E. 59 – Factual Proffer.  Mr. Grimaldos was given a minor role.  Id., D.E. 58 – Plea Agreement, ¶ 9(b).  The Court imposed sentence was 42 months followed by 2 years of supervised release. *Id*., D.E. 91 – Judgment. Similarly, Mr. Grimaldos brother and co-defendant, Leonardo Javier Grimaldos Rojas, who pled to an identical count, involving 150 kilos or more of cocaine, and assessed a minor role received a 46 months sentence followed by 2 years of supervised release. *Id*., (D.E. 56, 57 and 92).  (As the dockets reflect, these sentences were imposed without the benefit of pre or post government motions seeking reductions for substantial assistance). Here, Edison is similarly, if not identically, situated to the Grimaldos-Rojas brothers just mentioned.  Edison pled to the same statutory provision, involving the same amounts, after having been assessed the same minor role.

13

Similarly, in the case of *United States v. Dolly De Jesus Cifuentes-Villa*, Case No. 07-cr-20508-JAL (S.D. Fla. January 2014), the defendant, was sentenced to 57 months followed by 3 years of supervised release after pleading guilty to conspiracy to import more than 150 kilos of cocaine, in violation of 21 USC §963.  Here, Edison, again, pled to the same statutory provision involving the same amount.

Accordingly, a sentence of 50 months followed by two years of supervised release is sufficient, but not greater than necessary to satisfy the statutory purpose of punishment and deterrence, while at the same time avoiding unwarranted sentencing disparities among similarly situated defendants.

### A General Prayer for Leniency: A Lenient Sentence Recognizes Difficult Family Circumstances is Respectfully Requested.

Edison Gomez Molina's family circumstances may support an argument for a lenient sentence. It is markedly more difficult for a family to suffer "prison separation" when parent and child and family are in different continents.

A lenient sentence can be sustained where a defendant supplies vital and unique emotional support to every member of his family including his mother, wife, and children.

14

The Court has sentenced many who similarly suffer the pain of family separation. This is a difficult or the most difficult part of a jail sentence. It bears repeating,

> When a parent is incarcerated, (1) children's lives are disrupted; (2) children often lose contact with their parents; (3) prison visits are difficult (4) most children live in poverty before, during and after their parents incarceration; (5) children experience difficult memories; and (6) children are at an increased risk for poor academic treatment, truancy, dropping out of school, gang involvement, early pregnancy, drug abuse, and delinquency.

Marc Mauer and Meda Chesney-Lind, *Invisible Punishment: The Collateral Consequences of Mass Imprisonment* (2005). The Defendant blames himself which makes his punishment that much worse.

## THE MINIMALLY-SUFFICIENT SENTENCE

As discussed above, *Booker* and 18 U.S.C. § 3553(a)'s parsimony provision imposes a statutory cap on sentences, no matter what is recommended under the sentencing guidelines: the sentence must be "sufficient, but not greater than necessary" to achieve the purposes of punishment. A sentence of 50 months followed by 2 years of supervised release is a sentence which is "sufficient, but not greater than necessary" to accomplish the objectives of 18 U.S.C. § 3553.

The proposed sentence achieves the goal of deterrence, incapacitation and rehabilitation. Specific deterrence and incapacitation are relatively

15

minor considerations in this case. In short, he presents no risk of recidivism. General deterrence is amply served by the already severe impositions as well as the many consequences Edison has experienced as a result of the filing of the charges.

In determining the minimally sufficient sentence, the Court must essentially ask whether a more severe sentence will achieve greater justice and deterrence, incapacitation and rehabilitation. Respectfully, it will not in this case. In making this judgment it is important to mention that Edison Gomez-Molina has suffered as a result of his conduct and prosecution. Upon his release from imprisonment in his late 40's, defendant faces the task of rebuilding his life. Although Edison Gomez-Molina recognizes he has brought much of this upon himself, these are matters worth assessing in determining what is appropriate judicial punishment.

Respectfully submitted,

*/s/ Jose-Carlos A. Villanueva*
JOSE-CARLOS VILLANUEVA, ESQ.
Counsel for Defendant
6790 Coral Way, Third Floor
Miami, Florida 33155
Tel: (305) 261-4000 (Ext. 3709)
Fax: (305) 357-3887
FL Bar No.: 0034658
jcv@jcvpa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 28, 2014, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will sent a notice of electronic filing to all corresponding parties.

                                      */s/Jose-Carlos A. Villanueva*
                                JOSE-CARLOS A. VILLANUEVA