```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF FLORIDA
                     MIAMI DIVISION
               CASE NO. 10-20763-CR-LENARD
```

UNITED STATES OF AMERICA,                    FEBRUARY 4, 2014
                                             10:38 A.M.
                    Plaintiff,


        vs.



EDISON GOMEZ MOLINA,

                    Defendant.        PAGES 1 THROUGH 21
_____


                  TRANSCRIPT OF SENTENCING
          BEFORE THE HONORABLE JOAN A. LENARD
              UNITED STATES DISTRICT JUDGE



APPEARANCES:


FOR THE PLAINTIFF:      Mr. Michael B. Nadler, AUSA
                        OFFICE OF U.S. ATTORNEY
                        99 N.E. 4th Street
                        Miami, Florida  33132


FOR THE DEFENDANT:      Mr. Jose-Carlos A. Villanueva, Esq.
                        LAW OFFICES OF JOSE-CARLOS VILLANUEVA
                        6790 Coral Way, Third Floor
                        Miami, Florida  33155


COURT REPORTER:         Carly L. Horenkamp, RMR, CRR, CRC
                        U.S. DISTRICT COURT
                        400 N. Miami Avenue, Room 12-3
                        Miami, Florida  33128
                        (305) 523-5147

1       (Open Court, 10:38 a.m.)

2       (Defendant aided by Court-Certified Spanish Interpreters.)

3           THE COURT:  United States of America versus Edison

4    Gomez Molina, Case No. 10-20763.

5           Good morning.  Counsel and probation, state your

6    appearances please for the record.

7           MR. NADLER:  Good morning, Your Honor.  Michael Nadler

8    on behalf of the United States.

9           THE COURT:  Good morning.

10          MR. VILLANUEVA:  Good morning, Your Honor.

11   Jose-Carlos Villanueva on behalf of Edison Gomez Molina, who is

12   present in the courtroom and aided by an interpreter.

13          THE COURT:  Good morning.

14          PROBATION OFFICER:  Good morning, Your Honor.  Marilys

15   Martinez for probation.

16          THE COURT:  Good morning.  You may be seated.

17          Mr. Gomez Molina is set for sentencing today.

18   Mr. Gomez Molina, have you read the advisory presentence

19   investigation report and its addendums or was it read to you?

20      (Pause.)

21          THE COURT:  Is he hearing through the earphones?

22          THE INTERPRETER:  Yes, ma'am.

23          THE COURT:  Okay.  You can be seated.  And you're

24   hearing okay now through the earphones?  You're hearing the

25   interpreter?

1        THE DEFENDANT:  Yes, I am now.

2        THE COURT:  And have you and your attorney discussed

3 the advisory presentence investigation report?

4        THE DEFENDANT:  Yes, ma'am.

5        THE COURT:  My examination of the file indicates that

6 neither the government nor the defendant have filed any

7 objections to the advisory presentence investigation report.

8 The defendant filed a sentencing memorandum and a supplemental

9 sentencing memorandum.  Is that correct?

10        MR. VILLANUEVA:  That is correct, Your Honor.

11        THE COURT:  Do you agree, Mr. Nadler?

12        MR. NADLER:  Yes, I do, Your Honor.

13        THE COURT:  And does the government make the motion

14 for the third level off under 3E1.1(b)?

15        MR. NADLER:  The government makes that motion, Your

16 Honor, yes.

17        THE COURT:  The motion is granted.  The Court will

18 adopt the factual findings and guideline applications as

19 contained in the advisory presentence investigation report.

20        If we're going further, I would ask counsel to review

21 with me the major calculations in the advisory presentence

22 investigation report.

23        The offense level is 27.  The criminal history

24 category is I.  The advisory guideline range is 70 to 87

25 months' imprisonment, two to five years' supervised release,

1  12,500 to a $10 million fine, and a $100 special assessment.

2  Is that correct in its totality?

3        MR. NADLER:  On behalf of the United States, it is

4  correct, Your Honor.

5        MR. VILLANUEVA:  Yes, Your Honor.

6        THE COURT:  Mr. Gomez Molina, you are in court today

7  to receive your sentence.  Before that happens, I must ask you

8  if there's any legal cause as to why the sentence of the law

9  should not be pronounced upon you?

10        THE DEFENDANT:  No, ma'am.

11        THE COURT:  No legal cause having been shown as to why

12  sentence should not be imposed, the Court will consider

13  whatever you may wish to say in mitigation.

14        Counsel?

15        MR. VILLANUEVA:  Thank you, Your Honor.  May I

16  approach the lectern?

17        THE COURT:  Yes.

18        MR. VILLANUEVA:  Thank you.  Your Honor, as you

19  already know, the premise from which we must proceed is those

20  enunciated in 3553, being that the sentence be sufficient but

21  not greater than necessary to promote the goals of sentencing,

22  being just punishment, respect for the law, and deterrents.

23        In this particular case, reviewing the personal

24  history of the client and also his characteristics, in

25  conjunction with the nature of the offense, and understanding,

1   as the Court has already stated, what the guideline range is,

2   being the 70 to 87 months, we would like to impress upon the

3   Court that although we believe that the range reflects the

4   seriousness of the offense and also promotes respect for the

5   law, one area where we do diverge is whether or not it provides

6   just punishment.  And we believe that it doesn't under the

7   circumstances of this case for the very simple reason, looking

8   through -- looking at Mr. Gomez here through the prism

9   established by the Supreme Court in *Pepper*, which says, for a

10  determination of sentences, justice generally requires

11  consideration of particular acts by which crime was committed,

12  the circumstances of the offense, and the character and the

13  propensities of the offender.  And that's what we would like

14  the Court to hone in on with us this morning.

15          In particular, Edison Gomez Molina, as the Court

16  already read from the presentence investigation report, is from

17  Medellin, Colombia.  He was born there.  He was born to Mr. and

18  Mrs. Molina.  His father -- in order to understand the

19  character of an individual, we have to kind of look back at

20  the, I guess, the crucible which kind of forms us, and that

21  crucible comes and starts at the home.  The home of Edison is,

22  along with his two brothers, his older brothers, we have his

23  father and his mother.  His father was an individual who spent

24  many years and also retired from the Colombian military.  And

25  as we know, Colombia's military isn't one known for waging

 1   campaigns in foreign countries.  Instead, it's known for waging

 2   campaigns against separatist groups within Colombia who, as we

 3   know, typically fund their operations through narco

 4   trafficking, and those were the individuals that he fought

 5   against.

 6           After retiring, he went on to continue a life of

 7   service, this time being the head of security for an American

 8   company located in Colombia, a gas company.  Unfortunately, a

 9   few years after starting that endeavor, he lost his life after

10   being shot and killed by the very individuals he was

11   investigating for stealing from the company.

12           So that was the man that brought up Edison and forged

13   his character, along with his two older brothers, one of which

14   is an attorney in Colombia and the other which is in the public

15   transportation business.

16           Now, Mr. Gomez comes from that closely knit family.

17   He also, along with growing up with his brothers, he was

18   married in 2003 to his wife, Lina, who is present in the

19   courtroom, has made the trip up from Colombia, and they have

20   two children, one that's now 3 and the other one that's 6.

21   They were both 2 and 4 respectively when their father was first

22   incarcerated in May of 2012.  He's been held at the Picota --

23   he was held at the Picota for almost a year exactly until he

24   was extradited here to the United States in June, June 14th of

25   2013.

1          Upon arriving to the United States, he was immediately

2     debriefed, I believe it was June 14th, 2013, so according to my

3     calculations, 23 days later.  That reflects his acknowledgment

4     and acceptance of his responsibility in this offense.  I

5     believe it speaks volumes, insofar as this Court knows and as

6     Mr. Nadler also knows, sometimes these individuals, when they

7     are extradited, do not come to the table immediately, do not

8     accept responsibility immediately.  They typically want to see

9     what the government has.  We saw what the government had and we

10    decided that, not so much based on what the government had, but

11    on his conscience, to go to the table, and that's what we did.

12    And I think that's honorable and I think that reflects on the

13    character of Mr. Molina.

14          Now, moving on to some of the other factors, being

15    deterrents, both general and specific.  With respect to general

16    deterrents, Your Honor, I believe that the fact that it shows,

17    not only himself, but those that are similarly situated to him,

18    that they will be brought to this country, thousands of miles

19    away, to be held accountable for their actions, their actions

20    in Colombia, I believe speaks volumes.

21          With respect to specific deterrents, with Mr. Molina,

22    he has a loving family, he has supportive brothers, both older,

23    none of which are involved in any type of illicit activity.  He

24    has a loving wife.  And prior to his involvement in this

25    activity, he had his own bookkeeping firm which he employs two

1   individuals, and he made the bulk of his income working with

2   his own company that he established a year after having been

3   married.

4          So with respect to the deterrents factor, I don't

5   believe that anything -- a more stringent sentence would

6   support -- would be just in this case.  And I also believe that

7   once he -- that the punishment -- and I'm hoping that the judge

8   will be lenient and go, you know, say at the low end of the

9   guidelines or perhaps a little bit less, you know, he's going

10  to have the opportunity to go back to his homeland, his

11  country, and live out the rest of his life.  He has those

12  opportunities.  He has the financial backdrop for those

13  opportunities.  His wife is an accountant for a large American

14  company in the United States.  He's not the type of individual

15  that would need any type of rehabilitation in the prison.

16         And based on those factors, I'm hopeful that the judge

17  would consider that, would find that a sentence at the low end,

18  or a little bit lower than the guideline range, would be

19  sufficient but not greater than necessary to promote the

20  respect for the law, to promote just punishment, and also

21  reflect the seriousness of the offense.

22         And if I may, Your Honor, I was hopeful if his wife

23  could address briefly the Court, then followed by Mr. Molina,

24  if that would be --

25         THE COURT:  Yes, she may.

```
 1              MR. VILLANUEVA:  Thank you.

 2          (Ms. Moreno aided by Court-Certified Interpreter.)

 3              MS. MORENO:  Good morning.  I am Lina Moreno.  I

 4     am the wife of Edison Gomez, and I am here today to express a

 5     few words.  Edison and I have been married for ten years.  We

 6     met at the university where he was a good student and he also

 7     made headway by being a very good professional.  I would like

 8     to show you what kind of a good person he is.  He is an

 9     excellent son, an excellent brother.  He's an excellent father.

10     We have two small children.  We are very much aware, we accept

11     the fact that he made a mistake and it has been -- and as a

12     result he has spent months out of our home in jail, in prison.

13              Our children -- our children, we -- we need him very

14     much.  The children clamor for him.  On behalf of him, I would

15     like to apologize for the mistake that he made.  He got himself

16     involved in things that he should not have got himself involved

17     in.  And on behalf of my children, on behalf of us, I ask that

18     he please be allowed to come home as soon as possible because

19     we do need him very much.  Thank you.

20              THE COURT:  Mr. Gomez Molina, is there anything you

21     want to say, sir?

22              THE DEFENDANT:  Your Honor, I would like to apologize

23     for the -- for what I have done to you, to the United States

24     Government, and to my family for the mistake that I have

25     committed and the harm that I have caused.  I would -- I hope
```

1   that I will be able to go home soon to my home, to my family,

2   and thus restart my life again.  I also would like to continue

3   cooperating with the prosecution, as I have done from the

4   beginning of my case, in order to provide them information and

5   clear up my case.  And that is all, Your Honor.  Thank you very

6   much.

7           THE COURT:  What does the government say?

8           MR. NADLER:  To give the Court just a large

9   understanding of what happened, especially after Mr. Molina

10  Gomez arrived in the U.S., he was in this case the first to

11  arrive, came forward for a debrief within days.  He sat down.

12  He, both as an evaluation from the agents and myself, was

13  truthful, did not try to minimize his role, and in fact since

14  that time has been eager to continuously sit down and try to

15  cooperate.  His motivations I cannot speak to, but he has

16  provided significant information.  Without making any promises,

17  I do foresee a potential Rule 35 in Mr. Molina's future.

18          THE COURT:  But you're not making a 5K1.1 today?

19          MR. NADLER:  I am not at this juncture, no, Your

20  Honor.

21          THE COURT:  Are you asking me to consider all of what

22  you say?

23          MR. NADLER:  I'm asking you to consider.  I think it's

24  relevant for 3553 to understand the extent of not only his

25  role, but what he's done since arriving in the United States.

1    In fact, Mr. Gomez Molina came forward as it relates to one of

2    the named defendants, Mr. Jhon Fernando Usuga, who is a/k/a

3    Simon.  Given the associated danger with cooperating,

4    especially with defendants of that category, is always a fear,

5    irrespective of that, Mr. Molina offered, because we were

6    relatively unsure how hard a/k/a Simon would fight to go to

7    trial, to allow the government to use his name as a cooperator.

8    Unfortunately, Mr. Usuga agreed to cooperate relatively

9    immediately, sit down, so it became unnecessary, but the mere

10   fact that he was willing to do it showed his efforts in trying

11   to, I think in some way, make up for some of the crimes.

12          In terms of his role in this, it was minimal.  It was

13   a minor role.  He was involved.  He understood the conspiracy.

14   He was --

15          THE COURT:  It was minimal or minor?

16          MR. NADLER:  Minor.  That's why I -- it was a minor

17   role.  He was an accountant.  Most of his business was lawful.

18   He became associated with these individuals, and for this

19   deal -- at least one of the deals he was tangentially involved.

20   So he knew about it, he took part in it, but in terms of the

21   overall conspiracy, his role was minor.

22          Other than that, I can't speak to his background or

23   his family.

24          THE COURT:  And what is the government requesting?

25          MR. NADLER:  Pursuant to the terms of the plea

1    agreement, the government has agreed to go to low end.  The

2    government will understand if the Court sees this defendant as

3    needing a downward departure or departure.

4          One thing Mr. Villanueva didn't say, although in the

5    plea agreement both sides agreed not to ask for a departure,

6    Mr. Villanueva called me before he filed his sentencing

7    memorandum, before he was going to argue, and asked if it was

8    okay if he attempted to ask for a departure or variance, and I

9    did give him the okay.  I said it was perfectly fine.

10          THE COURT:  So I'm a little bit confused as to other

11    than 3553, if the government comes back -- strike that.

12          If the government comes back and requests a Rule 35,

13    is it on the same basis that you've just conveyed to me or

14    additional?

15          MR. NADLER:  No.

16          THE COURT:  It would be additional.

17          MR. NADLER:  There's one person I did not cover that

18    he's given information on.

19          THE COURT:  That's fine.  You don't have to say

20    anything further.

21          MR. NADLER:  Okay.  It will not be on the same things.

22          THE COURT:  Okay.

23          MR. NADLER:  Thank you, Your Honor.

24          THE COURT:  If you would stand with your client,

25    please.  The Eleventh Circuit Court of Appeals in the case of

1    *United States versus Pugh*, at 515 F.3d 1179, a 2008 decision,

2    has set forth the procedure that a sentencing court should

3    follow when there's a request for a variance from the advisory

4    guidelines, and the *Pugh* court found, as does this Court, that

5    pursuant to Supreme Court precedent, including the cases of

6    *Booker*, *Gall*, and *Rita*, the federal sentencing guidelines are

7    advisory, the Court must consult the guidelines, take them into

8    account, but is not bound by them.  And the *Pugh* court directs

9    the district court to first correctly calculate the guidelines

10   and then give both parties an opportunity to argue for whatever

11   sentence they deem appropriate and then the Court should

12   consider the 3553(a) factors to determine whether they support

13   the requested sentence.

14          So here, the defendant has requested a low end

15   guideline range or a little bit below, and the government's

16   position is low end guideline range or whatever the Court feels

17   is appropriate.

18          And before I make my findings, Counsel, I want to

19   commend you for filing the supplemental memorandum that gave

20   the Court further information as to the main focus of your

21   motion for downward variance in your sentencing memorandum,

22   which was 3553(a)(6), the need to should avoid unwarranted

23   sentencing disparities among defendants with similar records

24   who have been found guilty of similar conduct.  In that

25   supplemental memorandum, you candidly apprised the Court that

1   the two cases -- other cases, other than this one, but two

2   other defendants in other cases who had received a lesser

3   sentence than the defendant had done so as a result of the

4   Court's granting a 5K1.1 motion.  And I appreciate your candor

5   in elucidating and providing that further information for the

6   Court.

7          So having correctly calculated the guidelines, I now

8   turn to the 3553(a) factors.  Under 3553(a), the Court shall

9   impose a sentence sufficient but not greater than necessary to

10  comply with the purposes set forth in paragraph 2 of 3553(a).

11         And the first factor that the Court shall consider

12  under 3553(a) is the nature and circumstances of the offense

13  and the history and characteristics of the defendant.

14         The defendant stands before the Court having pled

15  guilty to Count 1 of the indictment, conspiracy to distribute 5

16  or more kilograms of cocaine, knowing that it would be imported

17  into the United States, a violation of 21 United States Code

18  Section 963.  And the offense conduct revolves around the use

19  of airplanes and other means of transportation to ship multiple

20  loads of cocaine from Colombia to Central America, and then

21  from Central America it would be delivered to representatives

22  of other drug trafficking organizations who would then

23  ultimately take the cocaine and bring it to the United States.

24         Here, this defendant was responsible for the shipment

25  or attempted shipment of at least 150 kilograms of cocaine that

1    he knew would ultimately be imported into the United States.

2         The government has brought forth, as did his counsel,

3    that immediately upon arriving into the United States after

4    extradition, that he was debriefed within a few days of his

5    arrival, that he was completely truthful, did not try to

6    minimize his role, that he expressed his eagerness to

7    cooperate, and went so far as to convey to the government that

8    they could use his name as a cooperator regarding another

9    defendant.  And oftentimes, as the government stated, it is

10   difficult for defendants to do that because of fear of

11   reprisals, especially to family members in Colombia or to

12   themselves while they're incarcerated, and the government

13   acknowledges that.

14        And the government also says that he has continued to

15   be eager to cooperate and has conveyed significant information.

16   Albeit, any further cooperation would be the subject of a

17   Rule 35 motion, not his initial cooperation.

18        The Court also shall consider under 3553(a) the need

19   for the sentence imposed to reflect the seriousness of the

20   offense, to promote respect for the law, and to provide just

21   punishment for the offense, to afford adequate deterrents to

22   criminal conduct, not only of this defendant, but other persons

23   who may be considering such conduct, as well as the other

24   factors under 3553(a).

25        Being cognizant of the immediate cooperation that this

1    defendant did provide to the government, the fact that he was

2    truthful and did not try to minimize his role, and being aware

3    of his family history as conveyed by his counsel, as well as

4    the need for the sentence imposed to reflect the seriousness of

5    the offense, to promote respect for the law, and provide just

6    punishment for the offense and afford adequate deterrents, I

7    find that a six-month reduction is the appropriate reduction --

8    strike that.  I'll reduce his sentence by one level to 63

9    months, which would be a level 26.

10           The Court has considered the statements of the

11   parties, the advisory presentence investigation report which

12   contains the advisory guidelines, and the statutory factors set

13   forth in Title 18, United States Code, Section 3553(a).  The

14   Court finds that the defendant meets the criteria set forth in

15   Section 5C1.2 of the advisory guidelines and Title 18, United

16   States Code, Section 3553(f)(1) through (5), and therefore, I

17   shall impose a sentence without regard to any statutory

18   minimum.

19           At this time, I will grant the defendant's motion for

20   a downward variance one level.

21           It is further the finding of the Court that the

22   defendant is not able to pay a fine and therefore no fine shall

23   be imposed.

24           Pursuant to the Sentencing Reform Act of 1984, it is

25   the judgment of the Court that the defendant, Edison Gomez

1    Molina, is hereby committed to the custody of the United States

2    Bureau of Prisons to be imprisoned for 63 months as to Count 1.

3           Upon release from imprisonment, the defendant shall be

4    placed on supervised release for a term of two years.

5           Within 48 hours of release from the custody of the

6    United States Bureau of Prisons, the defendant shall report in

7    person to the probation office in the district to which he is

8    released.

9           While on supervised release, the defendant shall not

10   commit any federal, state, or local crimes, he shall be

11   prohibited from possessing a firearm or other dangerous device,

12   he shall not possess a controlled substance, he shall cooperate

13   in the collection of DNA, and shall comply with the standard

14   conditions of supervised release that have been adopted by this

15   Court and with the following special condition:

16          At the completion of the defendant's term of

17   imprisonment, the defendant shall be surrendered to the United

18   States Immigration and Customs Enforcement for removal

19   proceedings consistent with the Immigration and Nationality

20   Act.

21          If the defendant is removed or if he voluntarily

22   leaves the United States, he shall not reenter the United

23   States without the prior express written permission of the

24   Secretary of Homeland Security.  The term of the supervised

25   release period shall be nonreporting while the defendant

1    resides outside of the United States.

2          If the defendant should receive the prior express

3    written permission of the Secretary of Homeland Security and

4    reenter the United States within the term of the supervised

5    release period, he is to report to the nearest United States

6    Probation Office in the district to which he reenters within 48

7    hours of his arrival.

8          It is further ordered that the defendant shall pay to

9    the United States a special assessment of $100, which shall be

10   due immediately.

11         And I specifically find that the sentence of 63 months

12   is a sentence that is sufficient but not greater than necessary

13   to meet the factors under 3553(a).

14         Are there any remaining counts, Mr. Nadler?

15         MR. NADLER:  The government moves to dismiss any

16   remaining counts.

17         THE COURT:  As to this defendant?

18         MR. NADLER:  As to this defendant.

19         THE COURT:  That motion is granted.

20         Mr. Gomez Molina, it is my duty to inform you, sir,

21   that you have 14 days with which to appeal the judgment and

22   sentence of this Court.  Should you desire to appeal and be

23   without funds with which to prosecute an appeal, an attorney

24   will be appointed to represent you in connection with that

25   appeal.  Should you fail to appeal within that 14-day period,

1    it will constitute a waiver of your right to appeal.

2           It's also my duty to elicit from counsel from both

3    sides fully articulated objections to the Court's finding of

4    facts and conclusions of law as announced at this sentencing

5    hearing, and to further elicit any objections which either side

6    may have to the manner in which sentence was imposed in this

7    case.  Are there any objections from the government?

8           MR. NADLER:  There are no objections, Your Honor.

9           THE COURT:  From the defendant?

10          MR. VILLANUEVA:  No objections, Your Honor.

11          THE COURT:  The Marshal will execute the sentence of

12   the Court.  Thank you.  We are in recess in this matter.

13          MR. NADLER:  Thank you for your time, Your Honor.

14          MR. VILLANUEVA:  Your Honor, my apologies, one last

15   matter.  With respect to recommendation for a facility, may I

16   address the Court on that issue?  I know it's --

17          THE COURT:  You may.

18          MR. VILLANUEVA:  Okay.  What we would request is FCI

19   Miami, if that's a possibility, but in --

20          THE COURT:  And why are you requesting that?

21          MR. VILLANUEVA:  So that his family will be able to

22   travel to Miami in order to visit him.

23          THE COURT:  All right.  I don't normally recommend

24   specific institutions because I find that's within the

25   bailiwick of the Bureau of Prisons, but I will recommend South

1   Florida, as close to South Florida as possible so that he can

2   be visited by his family who reside in Colombia.

3           MR. VILLANUEVA:  Or in the alternative, McRae in

4   Georgia.

5           THE COURT:  Okay.  So you want South Florida or

6   Georgia?

7           MR. VILLANUEVA:  Yes, and that's just because of the

8   flights that are available to those locations.  Thank you, Your

9   Honor.

10          THE COURT:  All right.  I'll make those

11  recommendations for the same reason.  Thank you.  We're in

12  recess in this matter, and in recess until 2 o'clock.

13      (Proceedings concluded at 11:12 a.m.)

14                      *   *   *   *   *

15

16

17

18

19

20

21

22

23

24

25

```
 1   UNITED STATES OF AMERICA              )
                                           ) ss:
 2   SOUTHERN DISTRICT OF FLORIDA          )

 3

 4                 C E R T I F I C A T E

 5       I, Carly L. Horenkamp, Certified Shorthand

 6   Reporter in and for the United States District Court for the

 7   Southern District of Florida, do hereby certify that I was

 8   present at and reported in machine shorthand the proceedings

 9   had the 4th day of February, 2014, in the above-mentioned

10   court; and that the foregoing transcript is a true, correct,

11   and complete transcript of my stenographic notes.

12       I further certify that this transcript contains

13   pages 1 - 21.

14       IN WITNESS WHEREOF, I have hereunto set my hand at Miami,

15   Florida, this 31st day of March, 2016.

16

17

18                      /s/ Carly Horenkamp

19                      Carly L. Horenkamp, RMR, CRR, CRC
                        Certified Shorthand Reporter

20

21

22

23

24

25
```